UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANABEL KHACHI,<br><br>                    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 1:19-CV-00257-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(ECF No. 17) |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 10).

At a hearing on June 9, 2020, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

Plaintiff challenges the Administrative Law Judge's ("ALJ") order on multiple grounds,[1]

---

[1] In addition to the legal challenge addressed in this order, Plaintiff claims that the ALJ's mechanical application of the grids is reversible error, the ALJ improperly rejected Plaintiff's testimony, and the ALJ's step five finding is not supported by substantial evidence.  Because the Court has determined that reversal and award of benefits is proper

including the ground that the ALJ improperly rejected the opinion of Plaintiff's treating doctor, Dr. Giano Lam.

The Ninth Circuit has explained the hierarchy of medical opinions, and the standards needed to reject such opinions as follows:

> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).

*Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir. 1995), as amended (Apr. 9, 1996).

Here, Plaintiff submitted a medical opinion by her treating physician, Dr. Lam. Dr. Lam's opinion was contradicted by the opinions of State agency medical consultants. The Court therefore looks to whether the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Dr. Lam.

The ALJ stated as follows regarding Dr. Lam's opinions:

> As for the opinion evidence, I have given little weight to the opinion of the treating source, Giang Lam, M.D., as set forth in the *Medical Opinion Re: Ability to Do Work-Related Activities (Physical)* dated October 14, 2016. Dr. Lam opined that the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently, she is able to stand and walk less than two hours in an eight-hour day, she is able to sit for two hours in an eight-hour day, she is able to sit for 30 minutes before changing positions, she must be able to walk around for five minutes every 60 minutes, she requires the opportunity to shift at will from siting

---

based on the ALJ's error related to the weight given to Plaintiff's treating physician, the Court has not addressed other grounds for reversal.

>or standing/walking, she does not need to lie down at unpredictable intervals during a work shift, she is occasionally able to twist and stoop, she is never able to crouch or climb ladders or stairs, her ability to reach and push/pull is affected by her impairments, she must avoid concentrated exposure to extreme cold, extreme heat, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights, and she must avoid even moderate exposure to wetness (Exhibit 6F).  Dr. Lam's opinion is inconsistent with the evidence of record, which indicates improvement in the claimant's back, neck, and shoulder pain with physical therapy.  Furthermore, he overstates the claimant's environmental limitations in light of the fact that the claimant has not sought or required treatment on an emergency basis for her asthma.

(A.R. 21-22).

In the Commissioner's opposition brief, the Commissioner attempts to justify these reasons in large part by looking to evidence not cited by the ALJ.  For the example, the Commissioner explains that the ALJ "noted the varying degrees of objective findings in the imaging evidence," and "noted positive findings upon examination."  (ECF No. 25, at p. 7).  The Commissioner also examines Dr. Lam's own examination and argues that it did not support Dr. Lam's conclusions.  (ECF No. 25, at p. 7).  However, the ALJ did not rely on this evidence or reasoning in rejecting Dr. Lam's opinion.  They thus do not shed light on the question of whether the ALJ provided specific and legitimate reasons supported by substantial evidence.

The Court next looks to the ALJ's given reason that "Dr. Lam's opinion is inconsistent with the evidence of record, which indicates improvement in the claimant's back, neck, and shoulder pain with physical therapy."  The ALJ did not cite to any portion of the record for this statement.  In the Commissioner's opposition brief, it points to the following pages in the record: 289, 291, 295, 371-72.

Page 289 is a record from February 25, 2016, which states in relevant part: "Patient states her pain on C/S is more joint and bone related; however, she states physical therapy has helped her relax and decreased stiffness on muscles. . . . Patient continues to present with tenderness to the Left Levator Scap. . . . Patient was unable to tolerate grade 3 mobilizations.  Progression from last treatment was minimal."  Page 291 is a record dated May 15, 2016, which states in relevant part: "Patient reports neck is feeling not bad; however, she missed her last visit due to a backache.

1    . . . Patient was able to tolerate clinical exercise program good without any major modifications
2    needed.  Patient remains unable to tolerate manual therapies in a fashion that will assist with
3    improving joint mobility and reduce soft tissue tension." (A.R. 291-292).  Page 295 is a record
4    from February 25, 2016, which states in relevant part: "Patient reports her pain levels are mild
5    pretreatment.  Patient states she has been trying to stand, sit and perform functional ADL's with a
6    taller position and improved posture." (A.R. 295).  Page 371 is a record from August 22, 2017,
7    which states in relevant part: "Patient reports pain level 5/10 pretreatment.  Patient reports
8    consistency with HEP and states as long as she does not re-aggravate her symptoms with
9    excessive lifting and reaching overhead her symptoms are much improved.  Patient is hopeful
10   additional PT treatment sessions with be approved to assist with patient progression to PLOF."
11   (A.R. 371).

12          Plaintiff, in response, points to various records showing that any progress was limited.
13   Plaintiff also points to a record dated May 23, 2016 stating "Patient was unable to progress
14   through increased pressure her Cervical Spine and postural muscular during massage work.
15   Patient remains unable to progress to and through grade 2 Cervical Spine Facet glides.  Due to
16   patient intolerance with manual therapies, patient clinical treatment has placed primarily upon
17   clinical exercise and postural positioning." (A.R. 295-96).  Plaintiff also points to hearing
18   testimony where Plaintiff explained that physical therapy was only helped his impairment in the
19   right shoulder and did not help her neck issues.  (A.R. 39 ("Q: Okay, have you had physical
20   therapy for your right shoulder.  Yes, I did for my shoulder, I couldn't for my neck, it didn't help
21   me.")).

22          The parties' citation to individual records over the course of physical therapy do not fully
23   resolve this issue.  Taken in isolation, there are quotations indicating certain improvement on
24   given days and also quotations indicating substantial continuing pain and limitations on other
25   days.  The value of examining individual records is even more limited because the physical
26   therapy sessions addressed two different physical issues at two different periods of time.
27   Accordingly, the Court has undertaken to review all the physical therapy records as a whole, in
28   the context of Dr. Lam's findings, to determine whether the ALJ's reliance on them provides a

specific and legitimate reason supported by independent evidence to give little weight to the treating doctor's opinion regarding Plaintiff's physical limitations.

The first set of physical therapy records are dated from February 25, 2016 through May 23, 2016. (Exhibit 2F and Exhibit 8F, including duplicates of certain records). The diagnosis being treated initially is "cervicalgia," (which relates to neck pain). Another diagnosis of "low back pain" is soon added. (A.R. 269). Plaintiff starts her treatment reporting "multiple regions of pain, however, most significant to the neck and shoulder regions. . . . Carrying objects she feels sharp pain to the neck. . . . Pain is getting worse with time." (A.R. 265). A few months later, at the end of the first set of sessions, on April 13, 2016, the physical therapist writes the following assessment:

> Patient has completed prescribed PT treatment sessions at this time. Objective measurements, demonstrate slight improvements in regards to static strength and ROM. Patient's clinical and home exercise tolerance has improved since patient's initial eval. Primary concern regarding patient recovery is complaints of distal radiating symptoms to the Right Hand and thumb region. Patient reports this pain as being sharp and is recreated with Left facet glides to the C5-C7 levels. I feel patient will benefit from additional skilled PT treatment . . . . If symptoms do not improve, in regards to the left UE radiating symptoms, I feel patient will best benefit from an MRI to better examine the root of her problem.

(A.R. 286). Plaintiff then "reports she is going to get an MRI" on May 10, 2016. (A.R. 289)

After this time, Plaintiff extends her therapy with a few physical therapy sessions that month. On May 23, 2016, the physical therapist wrote: "Patient was unable to progress through increased pressure her Cervical Spine and postural muscular during massage work. Patient remains unable to progress to and through grade 2 Cervical Spine Facet glides. Due to patient intolerance with manual therapy, clinical treatment has placed primarily upon clinical exercise and postural positioning." (A.R. 296).

The last physical therapy session related to cervicalgia and lower back pain was June 6, 2016. (A.R. 395). Patient comments that day were "Patient reports feeling increased Right and Left Shoulder pain this morning, secondary to increased physical activities this past weekend. Patient reports consistency with HEP. Overall C/S and Left Shoulder pain has improved, however, limitations, per pt. continue to exist with reaching and lifting activities involving the

Left side." (A.R. 395). The final evaluation from this period states:
> Patient has completed prescribed PT treatment sessions at this time. Relief from pain and dysfunction, per. Pt. is reported. However, limitations in regards to ADL tolerance and endurance continue to remain present. Patient puts for [sic] good effort within the clinical treatment setting and patient reports continued consistency with HEP. Patient is able to perform advanced Home Exercises, at this time, and no longer requires PT treatment to assist with progress towards functional goals. Patient is better aware of her postural deficits and has improved positioning to assist with lessening the stress through the C/S.

(A.R. 396).

Over a year later, Plaintiff begins a new series of physical therapy sessions on July 18, 2017 for "unspecified rotator cuff tear or rupture of right shoulder, not specified as traumatic," and "pain in right shoulder." (A.R. 391). These sessions relate to an injury Plaintiff sustained to her right shoulder and neck regions when she lifted a water case from ground level to shoulder level to place into a shopping cart. At the beginning of the sessions, "Patient reports pain constant with increasing pain with functional activities, as well as, increase pain at night, with reports of numbness and tingling to the right arm and hand." (A.R. 391). The evaluation states in part "patient presents with limited A/PROM, as well as, significant weakness secondary to pain. Patient also presents with poor postural and shoulder positioning, as well as, guarding of the right shoulder, limiting patient tolerance to exercise and manual therapies." (A.R. 393).

At the conclusion of those sessions, on August 22, 2017, "Patient reports pain level 5/10 pretreatment. Patient reports consistency with HEP and states as long as she does not aggravate her symptoms with excessive lifting and reaching overhead her symptoms are much improved." (A.R. 371). The final evaluation reports "Despite severe pain levels present during I/E patient compliance with POC has assisted in improving her functional ADL tolerance and pain management. . . . TTP has decreased and upon assessment ROM and static strength has improved." (A.R. 372).

The opinion at issue in this case, by treating physician Dr. Lam, is issued between these two sets of physical therapy sessions, on October 14, 2016. (A.R. 368). Dr. Lam's opinion addresses the diagnoses of (1) cervical degenerative disc disease, and (2) lumbar degenerative disc disease. (A.R. 366). The clinical findings are "chronic neck and low back pain," with

symptoms of "tenderness and weakness on neck and back." (A.R. 366). Dr. Lam's opinion does not concern the shoulder injury, which occurred after that time.

With this detailed review in mind, the Court turns again to the question of whether the ALJ's reason for giving little weight to the treating physician's opinion, "Dr. Lam's opinion is inconsistent with the evidence of record, which indicates improvement in the claimant's back, neck, and shoulder pain with physical therapy," is specific and legitimate and supported by substantial evidence. The Court concludes that it is not. While it is true that there were aspects of improvement when Plaintiff underwent physical therapy for her cervical and back issues, that improvement was clearly limited. Again on the last day of that treatment, "Patient reports feeling increased Right and Left Shoulder pain this morning, secondary to increased physical activities this past weekend. . . . Overall C/S and Left Shoulder pain has improved, however, limitations, per pt. continue to exist with reaching and lifting activities involving the Left side," and "limitations in regards to ADL tolerance and endurance continue to remain present." (A.R. 395, 396). Dr. Lam's opinion took place months after that treatment, still finding "neck pain radiates to both arms with numbness and weakness," and "low back pain shooting radiates to buttocks." (A.R. 366). The earlier physical therapy reports are not inconsistent with Dr. Lam's opinion. The later records, which document an injury and resulting improvement, also are not inconsistent with Dr. Lam's opinion. Plaintiff still reports "pain constant and increasing pain with functional activities," (A.R. 391), although the pain resulting from the shoulder injury improves somewhat.

Although not directly on point, the Court has also considered the ALJ's discussion of physical therapy records in another portion of the opinion, where the ALJ stated:

> However, although the claimant continued to complain of pain, [she] reported improvement in her symptoms with treatment. . . . [I]n July 2017 the claimant's back and neck apparently felt well enough that she lift [sic] a case of water from ground level to place in a shopping cart. (Exhibit 8F, p. 22).

(A.R. 20). In other words, the ALJ was pointing to the physical therapy records to demonstrate that the Plaintiff had the ability to lift a case of water, despite her testimony to the contrary. However, as described above, that lifting of water resulted in a painful and lingering injury that was the basis for her entire second serious of physical therapy appointments. Far from showing

her ability to lift a case of water, the physical therapy records demonstrate she could not do so and suffered an injury requiring months of treatment when she tried. This fundamental misunderstanding of Plaintiff's physical therapy records further casts doubt on the ALJ's reliance on those records as the central basis to give little weight to the opinion of Plaintiff's treating physician.

Although Plaintiff raises many other issues in Plaintiff's brief, this conclusion resolves the case. The Ninth Circuit has explained that "we have devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison v. Colvin 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the record has been fully developed. Additionally, as described above, the ALJ has failed to provide legally sufficient reasons for rejecting medical opinion evidence. We now turn to whether, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Dr. Lam's improperly discredited opinion included the opinion that Plaintiff was only able to stand and walk less than two hours in an eight-hour day, would need to change positions from sitting and standing, and was able to sit for two hours in an eight hour day and would miss about two days per month. (A.R. 21, 366, 368). The vocational expert already testified at the hearing before the ALJ that these limitations alone result in no full-time jobs because they account for less than full-time work. (A.R. 44 ("Q: If you take a person as the claimant's same age, education, page [sic] work experience who was limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently, standing and walking less than two hours out of an eight-hour day, sitting about two hours out of an eight hour day, who would need to shift at well from sitting or standing and walking, who would miss at least two days per month, would there by any jobs

they could do?  A: This is less than full-time work, counsel, so there are no full-time jobs.").[2]

For the foregoing reasons, the Court finds that the ALJ erred in rejecting certain portions of the opinion of treating physician Dr. Lam without specific and legitimate reasons supported by substantial evidence.  Once those limitations are credited as true, based on the record below, there are no full-time jobs available.

The Court reverses the decision of the Commissioner and remands this matter for the immediate calculation and award of benefits.

IT IS SO ORDERED.

    Dated:   **June 29, 2020**               /s/ Erica P. Grosjean
                                                           UNITED STATES MAGISTRATE JUDGE

---

[2] The Court need not address whether the ALJ properly gave little weight to Dr. Lam's additional environmental limitations stemming from Plaintiff's asthma because, as addressed above, Plaintiff is entitled to benefits even without any additional environmental limitations due to asthma.